UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHUMIAH HUBBARD,                    Civil Action No. 17-13204
on behalf of *Z.A.G.*,             Honorable Denise Page Hood
                                   Magistrate Judge Elizabeth A. Stafford
                Plaintiff,

        v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF Nos. 10, 15]

Plaintiff Chumiah Hubbard appeals a final decision of Defendant

Commissioner of Social Security (Commissioner) denying her minor

daughter, Z.A.G.'s, application for supplemental security income benefits

(SSI) under the Social Security Act.  Both parties have filed summary

judgment motions, referred to this Court for a report and recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B).  After review of the record, the Court

finds that the administrative law judge's (ALJ) decision is supported by

substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 15] be **GRANTED**;

- Hubbard's motion [ECF No. 10] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   BACKGROUND

### A.   Z.A.G.'s Background and Disability Application

Born in July 2007, Z.A.G. was almost seven years old when Hubbard filed her application for disability benefits on June 26, 2014. [ECF No. 8-2, Tr. 23]. At the time of filing, Z.A.G. was in preschool and was not enrolled in special education classes. [*Id.*] Hubbard alleges that Z.A.G. is disabled by attention-deficit hyperactivity disorder (ADHD). [*Id.*] Although Hubbard alleged a disability onset date of May 30, 2014, [ECF No. 8-2, Tr. 20], the relevant inquiry is whether Z.A.G. was disabled on or after her application date—June 26, 2014. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date.").

After Z.A.G.'s claim was denied initially, Hubbard filed a timely request for an administrative hearing, which took place on May 11, 2016, and during which Hubbard testified on Z.A.G.'s behalf. [ECF No. 8-2, Tr. 37-61]. In a June 20, 2016 written decision, the ALJ found that Z.A.G. had not been disabled during the relevant period. [*Id.*, Tr. 32-33]. The Appeals

2

Council denied review, making the ALJ's decision the final decision of the Commissioner, and Hubbard timely filed for judicial review.  [*Id.*, Tr. 1-6; ECF No. 1].

### B.    The ALJ's Application of the Disability Framework

A child under the age of 18 will be considered disabled if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner determines whether a child is disabled by analyzing three sequential steps, assessing: (1) whether the child is engaged in "substantial gainful activity"; (2) whether the child has any "severe" impairments;[1] and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *See* 20 C.F.R. § 416.924(a); *Barnett ex rel. D.B. v. Comm'r of Soc. Sec.*, 573 F. App'x 461, 462 (6th Cir. 2014).

In analyzing functional equivalence, the ALJ examines the effects of a

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 920(c).

claimant's impairments on six behavioral domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Barnett*, 573 F. App'x at 464; 20 C.F.R. § 416.926a(b)(1). A claimant's impairments "functionally equal the listings" if they result in "'marked' limitations in two domains" or "an 'extreme' limitation in one domain." § 416.926a(a). A "marked" limitation is defined as an impairment(s) that "interferes seriously" with the ability "to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation "interferes *very* seriously" with the ability "to independently initiate, sustain, or complete activities." 20 CFR § 416.926a(e)(3) (emphasis added).

Applying this framework, at the first step, the ALJ found that Z.A.G. had not engaged in substantial gainful activity since the application date. [ECF No. 8-2, Tr. 23]. Next, the ALJ determined that Z.A.G. had the severe impairment of ADHD. [*Id.*]. At the third step, she concluded that Z.A.G. did not have an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of one of the listed impairments. [*Id.*].

In assessing the six functional equivalence domains, the ALJ found

4

that Z.A.G. had less than marked limitations in four domains (acquiring and using information, attending and completing tasks, interacting and relating with others, and physical health and well-being) and no limitation in the other two domains (moving about and manipulating objects and caring for yourself).  [*Id.*, Tr. 27-32].  As a result, the ALJ determined that Z.A.G. was not disabled.  [*Id.*, Tr. 32-33].

## II.   ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

In her motion, Hubbard argues that the ALJ failed to consider the

5

extensive help that Z.A.G. receives to get through the day; failed to find that Z.A.G. was markedly limited in the domains of ability to care for herself, relate with others, acquire and use information, and complete tasks; and failed to give sufficient weight to the opinions of Z.A.G.'s teachers.  The Court disagrees and finds that the ALJ's decision is supported by substantial evidence.

**B.**

Hubbard first argues that the ALJ erred by failing to take into consideration the extensive help that Z.A.G. needs in school as compared to her peers as required by SSR 09-1p.  [ECF No. 10, PageID.264-67].  In determining the extent to which a child's impairment(s) compromise his or her ability to independently initiate, sustain, or complete an activity, the Commissioner considers the types of assistance the child needs in order to function.  *See* CFR 416.924a(b).

> In general, if a child needs a person, medication, treatment, device, or structured, supportive setting to make his functioning possible or to improve the functioning, the child will not be as independent as same-age peers who do not have impairments. Such a child will have a limitation, even if he is functioning well with the help or support.

Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule—The "Whole Child" Approach, 74 FR 7527-01.

Hubbard says that the ALJ overlooked evidence that, despite taking

6

medication, Z.A.G. experiences "great difficulty completing tasks, following instructions, and resisting distraction."  [ECF No. 10, PageID.265]. According to Hubbard, Z.A.G. seems to have the most difficulty understanding math even while taking her medication, and she struggles to focus in general after the medication wears off (typically mid-day).  [ECF No. 8-7, Tr. 179, 211].  Hubbard alleges that Z.A.G.'s teachers report that she is unfocused and cannot complete any of her work even while supervised, and that they must check her progress every few minutes and break directions into small steps for her.  [ECF No. 8-6, Tr. 124, 125, 156; ECF No. 8-7; Tr. 170].  And while Hubbard admits that Z.A.G. does not have a current IEP evaluation, she contends that Z.A.G. requires additional academic and behavioral assistance, and that she (Hubbard) attempted to secure an IEP from Z.A.G.'s former school.  [ECF No. 8-7, Tr. 173]. Hubbard further claims that Z.A.G. frequently visits the school's "resource room" which provides additional support for challenged students, much like an IEP program.  [ECF No. 8-7, Tr. 170].  According to Hubbard, it is a "battle" to get Z.A.G. to complete her homework and she refuses to do it. [ECF No. 8-7, Tr. 168].

Contrary to Hubbard's arguments, the ALJ fully considered Z.A.G.'s medication use, including doctor's notes, school records, teachers'

opinions, the administrative hearing testimony, and other evidence in

determining that Z.A.G. was not disabled.  With respect to Z.A.G.'s

medication, the ALJ noted that Hubbard indicated in the SSI application

that Z.A.G. "struggles with impulsivity and attention span, and that her

prescribed medications are only marginally effective and wear off in less

than 8 hours."  [ECF No. 8-2, Tr. 24].  But at a June 2014 medication

review, Michael Butkus, Ph.D., indicated that Z.A.G. presented as "calm

and quiet."  [ECF No. 8-7, Tr. 178].  At this time, Z.A.G.'s grandmother also

reported significant improvement in hyperactivity and attention since the

initiation of the Ritalin.  [*Id.*]  She also noted that Z.A.G. "is now able to sit

down and do homework without difficulty" and that she was "sleeping much

better" and able to focus better at school.  [ECF No. 8-2, Tr. 25; ECF No. 8-

7, Tr. 177-78].

Following a September 2014 appointment in which Hubbard indicated

that Z.A.G.'s medication was wearing off too quickly, Dr. Butkus prescribed

extended-release Concerta.  [ECF No. 8-2, Tr. 25; ECF No. 8-7, Tr. 179-

81].  Z.A.G.'s dosage of Concerta was again adjusted in November 2014

after Hubbard continued to report that her daughter displayed

inattentiveness and hyperactivity.  [ECF No. 8-2, Tr. 25; ECF No. 8-7, Tr.

182-84].  The ALJ continued to explore the limitations of Z.A.G.'s

8

medications at the administrative hearing, eliciting testimony that even with her medications, Z.A.G. struggled to complete some tasks.  [ECF No. 8-2, Tr. 55].

The ALJ likewise considered the opinions and reports from Z.A.G.'s teachers during the relevant period.  In October 2014, Z.A.G.'s second grade teacher, Stephanie Ciraulo, indicated that Z.A.G. "struggles to complete assignments and follow directions when she does not take her medication[.]"  [ECF No. 8-2, Tr. 25; ECF No. 8-6, Tr. 123-29, 131-34].  The ALJ noted that this results in "obvious" and "serious" problems in several subcategories of "acquiring and using information" and "attending and completing tasks."  [*Id.*].  But Ms. Ciraulo also stated that Z.A.G. remained "in good academic standing due to taking her medication daily," and that she demonstrates respect for others and tries hard to resist distractions. [*Id.*].  Her Spanish teacher, Hassan Zarfour, noted that Z.A.G. "excels in working well with others while in any class by demonstrating outstanding leadership qualities."  [ECF No. 8-6, Tr. 133].  And on her year-end report card for 2014-15, Z.A.G. earned three A's, two B's, and one C in regular course curriculum.  [ECF No. 8-6, Tr. 131].

The ALJ found it significant that Z.A.G. was able to maintain above-average grades and had "never undergone an IEP evaluation for poor

9

academic performance or behavioral problems."  [ECF No. 8-2, Tr. 26].

The ALJ also that Z.A.G.'s third grade teacher, Natalie Walicki, wrote a

January 2016 letter stating, "[W]hen [Z.A.G.] does not take her medicine,

she struggles with all tasks, even sitting in her seat. . . .  With medicine,

[Z.A.G.] is a very proficient reader.  She still struggles with math and

completing her assignments, even with her medicine."  [ECF No. 8-2, Tr.

26; ECF No. 8-7, Tr. 211].  In April 2016, Ms. Walicki prepared a NICHQ

Vanderbilt Assessment teacher report stating that while Z.A.G. continued to

have difficulty in competing homework and paying attention, and while her

academic performance is "problematic" in math, written expression,

assignment completion, and organizational skills, she was very kind and

creative, a "proficient reader," and that "if she completes her homework, her

grades will improve immensely."  [ECF No. 8-2, Tr. 26; ECF No. 8-7, Tr.

209-10, 211].  She also noted that Z.A.G. reads and does math at a

kindergarten level without medication, but is on grade level with medication.

[ECF No. 8-7, Tr. 208].  Z.A.G.'s third quarter report card from 2015-16

indicates that she received three A's, one B, and two N's (in math and ELA

studies).  [ECF No. 8-7, Tr. 207].

The ALJ also considered Hubbard's testimony at the administrative

hearing about the type of assistance that Z.A.G. requires in the school

environment.  Hubbard testified that Z.A.G. struggled with math and completing homework assignments, but that she enjoyed reading.  [ECF No. 8-2, Tr. 54, 55].  She stated that Z.A.G.'s grades fluctuate, but that she had never been held back a grade level or received an IEP evaluation.  [*Id.*, Tr. 57].  Hubbard acknowledged that medications aided Z.A.G.'s school performance but said that her medications tend to wear-off during the school day.  [*Id.*, Tr. 55, 57].  The ALJ noted that Hubbard described Z.A.G. as "cooperative, kind, and polite, and denied any significant behavior problems other than difficulty following direction and completing shores at home."  [ECF No. 8-2, Tr. 27, 50].

Hubbard argues that parts of record, including Z.A.G.'s teacher's opinions, were not seriously considered by the ALJ.  For example, she claims that Ms. Walicki noted that Z.A.G. fidgeted, forgot daily activities, lost necessary objects, struggled to organize tasks and objects, and often made careless mistakes.  [ECF No. 10, PageID.272; ECF No. 8-7, Tr. 209].  Ms. Walicki also described Z.A.G.'s written expression, assignment completion and organizational skills as problematic, and indicated that she struggled to complete her assignments even with medication.  [*Id.*; ECF No. 10, PageID.272; ECF No. 8-6, Tr. 112].  Hubbard points out that teachers Ms. Klebanoff and Ciraulo noted these same difficulties.  [ECF

No. 10, PageID.272].

Hubbard's arguments do not warrant reversal. The ALJ did discuss much of the evidence Hubbard cites (as discussed above), and there is no requirement that the Commissioner or the Court discuss every piece of evidence in the record. *Kornecky v. Comm'r of Soc. Sec.,* No. 04-2171, 167 F. App'x 496, 508 (6th Cir. Feb. 9, 2006). Essentially, Hubbard is requesting that the court reweigh the evidence to determine whether Z.A.G. should have been found disabled. Such a reweighing of the evidence is not permissible. *Cutlip v. Sec. of Health & Hum. Servs.,* 25 F.3d 284, 286 (6th Cir. 1994) (If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.") (citations omitted). This rule applies when, as here, the ALJ considered the totality of the record, not fragments of the record which may have provided a distorted view of the extent of the claimant's impairment. *Brooks v. Comm'r of Soc. Sec.*, No. 11-5654, 531 F. App'x 636, 641 (6th Cir. Aug. 6, 2013) ("[A] substantiality of evidence evaluation does not permit a selective reading of the record."). For these reasons, the evidence does not support Hubbard's claim of error.

**C.**

12

Hubbard also claims that the ALJ committed reversible error in failing to find "marked limitations" in four domains:  1) caring for yourself; 2) interacting and relating with others; 3) acquiring and using information; and 4) attending and completing tasks.  [ECF No. 10; PageID.267-71].  As noted above, a finding of functional equivalency to a listing is indicated if a claimant's impairments result in marked limitations in two of the six listed behavioral domains.  § 416.926a(a).  A marked limitation is found when "your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities." § 416.926a(e)(2)(i).

In evaluating Z.A.G.'s limitations in the four domains, the ALJ considered the evidence in the record and gave considerable weight to the opinion of state medical consultant, William Schirado, Ph.D.  [ECF No. 8-2, Tr. 25; ECF No. 8-3, Tr. 62-69].  Dr. Schirado opined that Z.A.G.'s ADHD resulted in no limitation in the domains of "acquiring and using information," "moving about and manipulating objects," "caring for herself," or "health and physical well-being," less than marked limitation in the domain of "interacting and relating with others," and marked limitation in "attending

13

and completing tasks." [ECF No. 8-3, Tr. 66]. The ALJ's analysis of each of the domains is described below.

### 1. Caring for Yourself

In this domain, the Commissioner considers how well a child maintains his or her emotional and physical state, including "how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area. 20 C.F.R. § 416.926a(k). Some examples of limited functioning in caring for yourself include: continuing to place non-nutritive or inedible objects in your mouth; often using self-soothing activities showing developmental regression (e.g., thumbsucking, re-chewing food), or having restrictive or stereotyped mannerisms (e.g., body rocking, headbanging); not dressing or bathing oneself appropriately for his or her age because of an impairment(s) that affects this domain; engaging in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take medication), or ignoring safety rules; not spontaneously pursuing enjoyable activities or interests; and having disturbance in eating or sleeping patterns. § 416.926a(k)(3)(i)-(vi).

Hubbard says that Z.A.G. is unable to execute simple tasks, like her

chores, which demonstrates a marked limitation in caring for herself.  [ECF No. 10, PageID.271].  The ALJ relied on Dr. Schirado's conclusion that Z.A.G. had no limitation in this domain.  [ECF No. 8-3, Tr. 62-69].  The ALJ also noted that "although the claimant has difficulty cleaning her room and completing household chores, she enjoys reading books and playing with her cousins, and there are no medical records documenting that she has failed to reach age-appropriate developmental milestones."  [ECF No. 8-2, Tr. 32; citing ECF No. Tr. 164-81, 190-200].  The ALJ considered Z.A.G.'s difficulty in completing household tasks and weighed it against the other evidence in the record, including Dr. Schirado's conclusion that Z.A.G. had no limitation in this domain.

## 2. Interacting and Relating with Others

Some examples of limitations in interacting and relating with others include: having no close friends, or having friends that are all older or younger than you; avoiding or withdrawing from people you know, or becoming overly anxious or fearful of meeting new people or trying new experiences; having difficulty playing games or sports with rules; having difficulty communicating with others (e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance); and having difficulty speaking intelligibly or with adequate

fluency. § 416.926a(i)(3).

In determining that Z.A.G. had less than marked limitation in the domain of interacting and relating with others, the ALJ noted that records from Southwest Detroit Lighthouse Charter Academy show that she struggled to follow teacher instructions and remain in her seat during class; however, she got along well with peers and authority figures and had no history of significant behavior issues in school or at home.  [ECF No. 8-2, Tr. 30; citing ECF No. 8-6, Tr. 112-13, 123-30, 131-34; ECF No. 8-7, Tr. 164-81].  Specific school reports indicate that Z.A.G. "excel[led] in working well with others" and "demonstrate[ed] outstanding leadership qualities (teamwork, empathy, good self-control, etc.)."  [ECF No. 8-6, Tr. 133].  The ALJ also relied on Dr. Schirado's opinion that Z.A.G. had less than marked limitation in the domain of interacting and relating to others.  [ECF No. 8-2, Tr. 25; ECF No. 8-3, Tr. 62-69].  This finding is also supported by Hubbard's testimony and family reports to doctors.  [ECF No. 8-2, Tr. 55-56; ECF No. 8-7, Tr. 175, 178, 190].

### 3. Acquiring and Using Information

Examples of "limited functioning" in acquiring and using information—but not necessarily "'marked' or 'extreme' limitation[s]"—include inability to understand words about space, size, or time (e.g., in/under, big/little,

morning/night); inability to rhyme words or the sounds in words; difficulty recalling important things learned in school yesterday; difficulty solving mathematics questions or computing arithmetic answers; and talking only in short, simple sentences and having difficulty explaining what you mean. § 416.926a(g)(3).

In determining that Z.A.G. had less than marked limitation in acquiring and using information, the ALJ stated, "[A]lthough the claimant has difficulty maintaining attention, completing homework assignments, and following classroom instructions, her behavior and academic performance are significantly improved when she is compliant with her medications. Furthermore, she generally receives above-average grades and she has never undergone an IEP evaluation." [ECF No. 8-2, Tr. 28; citing ECF No. 8-6, Tr. 112-13, 123-30, 131-34; ECF No. 8-7, Tr. 211]. The ALJ also relied on Dr. Schirado's opinion that Z.A.G. had no limitations in this domain. [ECF No. 8-2, Tr. 25; ECF No. 8-3, Tr. 62-69].

For these reasons, the ALJ's determination that Z.A.G. is not markedly limited in the domains of "caring for yourself," "interacting and relating with others," and "acquiring and using information," is supported by substantial evidence.

### 4. Attending and Completing Tasks

Deficiencies in attending and completing tasks are shown when a child is "easily startled, distracted, or overreactive to sounds, sights, movements, or touch"; is slow to focus on or fails to complete activities of interest (e.g., games or art projects); repeatedly becomes sidetracked from activities or frequently interrupts others; is easily frustrated and gives up on tasks, including ones he or she is capable of completing; and requires extra supervision to stay engaged in an activity. § 416.926a(h)(3).

In determining that Z.A.G. has less than marked limitation in attending and completing tasks, the ALJ stated that "[w]hile the claimant is easily distracted and has difficulty completing tasks and following instructions, she enjoys reading children's books and is able to complete in-class assignments when complaint with her medications." [ECF No. 8-2; Tr. 29; citing ECF No. 8-6, Tr. 112-13, 123-30, 131-34]. But as mentioned, the ALJ gave considerable weight to Dr. Schirado's opinion, and he concluded that Z.A.G. had a marked limitation in this domain. [ECF No. 8-2, Tr. 25]. The ALJ did not explain why she gave considerable weight to Dr. Schirado's opinion but at the same time concluded that Z.A.G. has less than marked limitation in attending and completing tasks. And Dr. Schirado's opinion that Z.A.G. had marked limited in this domain is supported by evidence showing that Z.A.G. often lacks the requisite

18

attention and focus on tasks has difficulty sustaining attention to tasks or activities, does not follow through on instructions and fails to finish schoolwork, and is forgetful in daily activities.  [ECF No. 8-6, Tr. 112, 125]. So the Court cannot conclude that substantial evidence supports the ALJ's decision that Z.A.G. has less than marked limitation in attending and completing tasks.

Still, as noted above, a claimant's impairments "functionally equal the listings" if they result in "'marked' limitations in two domains" or "an 'extreme' limitation in one domain."  § 416.926a(a).  Here, Hubbard does not argue that Z.A.G.'s impairments result in extreme limitations in the domain of attending and completing tasks; she only argues that the evidence "supports a *marked* limitation in Plaintiff's ability to … attend to and complete task[s]. …"  [ECF No. 10, PageID.269 (emphasis added)]. Because Hubbard has failed to show that Z.A.G.'s limitations result in marked limitations in at least two of the six functional domains, any error the ALJ made with respect to the domain of attending and completing tasks does not change the outcome.  § 416.926a(a); *see also Lintern v. Colvin*, No. 14-12034, 2015 WL 6541692, *6-7 & n.3 (E.D. Mich. Oct. 29, 2015) ("even were the Court to conclude that the ALJ's decision as to one of the two domains … was not supported by substantial evidence, the error would

19

be harmless and would not require a remand.") (citing cases).

## III.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that

Hubbard's Motion for Summary Judgment [R. 10] be **DENIED**, the

Commissioner's Motion [R. 15] be **GRANTED** and the decision

**AFFIRMED**.

> s/Elizabeth A. Stafford
> ELIZABETH A. STAFFORD
> United States Magistrate Judge

Dated: October 19, 2018

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 19, 2018.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
